# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| ELLEN G., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. ED CV 18-00112-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Ellen G. ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB").[1] The Commissioner's decision is reversed and this case is remanded for an award of benefits.

## I. BACKGROUND

In 2011, Plaintiff protectively filed an application for DIB alleging disability beginning on September 16, 2006. See Dkt. 17, Administrative Record ("AR") 144-45. After her application was denied at the initial and

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

reconsideration levels, Plaintiff requested a hearing before an administrative law judge ("ALJ"). See AR 72, 82, 91-92. In October 2013, after a hearing before an ALJ, Plaintiff received an unfavorable decision. See AR 25-39. On June 17, 2016, this Court remanded for further proceedings because the ALJ failed to consider whether Plaintiff's carpal tunnel syndrome was a severe impairment. See AR 848-53.

On August 23, 2017, a second ALJ held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert testified. See AR 823-45. The ALJ issued an unfavorable decision on September 21, 2017. See AR 802-16.

The ALJ found that Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, fibromyalgia, migraine headaches, osteoarthritis, irritable bowel syndrome, obesity, degenerative joint disease of the knees bilaterally, history of right wrist fracture, history of fracture of the cuboid bone, bilateral shoulder impingement, degenerative joint disease of the carpus, mildly displaced fracture of the distal radium, osteoarthritis of the first meta joint, degenerative disc disease, and neuropathy. See id. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work. See AR 810. Based on the evidence of record, the ALJ determined that Plaintiff could perform her past relevant work as a data systems analyst and contract clerk/consultant technician through her date last insured ("DLI") of December 31, 2011. See AR 816. Accordingly, the ALJ determined that Plaintiff was not disabled at any time between the alleged onset date and the DLI. See id.

On November 21, 2017, the ALJ's decision on remand became the final decision of the Commissioner. See Dkt. 23, Joint Stipulation ("JS") at 3; 20 C.F.R. § 404.984 (explaining that "when a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will

become the final decision of the Commissioner . . . unless the Appeals Council assumes jurisdiction of the case" within 60 days after the date of the ALJ's decision). This action followed. See Dkt. 1.

## II. DISCUSSION

The parties dispute whether the ALJ properly evaluated the opinion of treating neurologist Dr. Jack Florin. See JS at 5.

### A. Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014).

When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. § 404.1527(c).

## B. Medical Opinions and ALJ Reasoning

From October 1999 to May 2017, Dr. Florin treated Plaintiff for chronic migraine headaches and cervical dystonia. See AR 410-38, 1044-46, 1070. The record contains several opinions from Dr. Florin. Of most importance here, Dr. Florin completed an RFC questionnaire concerning Plaintiff's headaches on January 17, 2012, less than a month after Plaintiff's DLI. See AR 410-14. Dr. Florin diagnosed Plaintiff with chronic migraine and indicated that Plaintiff had 20 headache days per month. See AR 410. Plaintiff's headache symptoms included throbbing and constant pain at severity level 10 of 10, vertigo, nausea and vomiting, malaise, photosensitivity, visual disturbances, mood changes, mental confusion, inability to concentrate, and tenderness. See AR 410-11. Dr. Florin indicated that Frovatriptan reduced Plaintiff's migraine pain to severity level 7 of 10, and that cold packs and lying in a dark room also improved symptoms. See AR 411. Dr. Florin opined that Plaintiff's headaches precluded her from performing basic work activities, that Plaintiff was unable to work and could not perform even low stress jobs due to her medical issues, and that she had limitations in her abilities to sit, stand, walk, lift, bend, stoop, crouch, and use her arms, hands and fingers, as well as difficulties with vision, temperature, humidity, and noise. See AR 412-13.

In 2017, Dr. Florin submitted answers to interrogatories from Plaintiff's counsel in which he indicated that, in his professional opinion, there was a degree of probability that the objective medical findings identified in his January 17, 2012 report reached back to Plaintiff's physical state before December 31, 2011. See AR 1733. He noted that her chronic migraines had caused Plaintiff to be "severely disabled, despite multiple preventatives." Id.

The record also contains a neurological re-evaluation summary from Dr. Florin dated May 13, 2013 in which Dr. Florin diagnosed Plaintiff with chronic migraine, fibromyalgia, and carpal tunnel syndrome, noted that she

had 20 headache days out of 30 and was "failing multiple preventative medications including Botox," and opined that "[h]er migraine disability is such that she is unable to work." AR 1070.

The ALJ gave three reasons for giving Dr. Florin's 2012 and 2013 opinions "little weight." First, she stated that those opinions "were based, in part, on objective evidence available after the date last insured." AR 814. Second, she stated that Dr. Florin's treatment notes from the relevant period—i.e., September 16, 2006 through December 31, 2011—"are minimal and do not support his opinion." Id. Finally, the ALJ faulted Dr. Florin for not explaining "why her headaches prevented her from working after she was laid off, but not prior to that time." Id.

## C. Analysis

Plaintiff contends that the ALJ failed to articulate specific and legitimate reasons for discounting or rejecting Dr. Florin's opinions. See JS at 5-15.

As an initial matter, the ALJ was not entitled to discount or reject Dr. Florin's opinions solely because they were rendered after the DLI. While the ALJ must consider only impairments Plaintiff had before the DLI, "'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition.'" Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (as amended) (quoting Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988)). "It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." Smith, 849 F.2d at 1225. On the other hand, an ALJ may reject a medical opinion, even that of a treating physician, that "d[oes] not relate plaintiff's current symptoms back to the relevant time period." Morgan v. Colvin, No. 12-01235, 2013 WL 6074119, at *10 (D. Or. Nov. 13, 2013); see also Shuff v. Berryhill, No. 16-05579, 2017 WL 4224423, at *3 (W.D. Wash. Sept. 22, 2017) (holding that ALJ properly discounted opinion postdating DLI by two

5

years which described claimant's symptoms "at this point" and explaining that "post-DLI opinions may be properly discounted where they do not have retrospective applicability").

Little in the record supports the ALJ's finding that Dr. Florin's critical January 17, 2012 opinion was based, in part or otherwise, on objective evidence available after the DLI. See AR 814. The only medical record from that period is Dr. Florin's own office visit notes from January 17, 2012, in which he notes that Plaintiff presented the "same pain pattern from last year." AR 415. Moreover, Dr. Florin affirmed in his response to counsel's interrogatory that his January 17, 2012 opinion extended to Plaintiff's condition before December 31, 2011. See AR 1733.

Nor is there substantial evidence in the record to support the ALJ's conclusion that Dr. Florin's records from the relevant period were "minimal" and did not support his opinion. In fact, Dr. Florin's treatment notes during the relevant period support his January 2012 notation that Plaintiff experienced 20 headache days per month. See AR 419 (noting intractable migraine occurring 15 to 20 days per month), 426 (noting chronic daily headaches); 427 (noting daily headache); see also AR 416 (noting 10 headache days per month), 420 (noting use of migraine medication twice per week), 424 (noting severe headaches occurring 10 of 30 days). Similarly, consistent with the January 2012 opinion reflecting migraine pain at severity level 10 and reduced to level 7 with medication, the treatment notes during the relevant period consistently show that Plaintiff's migraines caused a high level of pain. See AR 416 ("every [headache] very severe and impacts function"), 417 (level 9), 419 (level 10), 422 (level 7), 424 (level 10). These treatment notes also reflect that the migraines caused tenderness, see AR 416 (temporal tenderness severe), 418 (moderate tenderness in right suboccipital area), 419 (marked pain and tenderness in the right occipital area), 422 (severe bitemporal and

6

bioccipital scalp tenderness), vertigo and nausea, see AR 424, and required her to lie down or rest, see AR 421-22, 424. Finally, consistent with Dr. Florin's notation in August 2017 that Plaintiff had tried numerous medications to no avail, the treatment notes during the relevant period indicate that several medications and treatments were ineffective or provided only temporary relief. See AR 416 (noting that nerve block lessened severity but not frequency of headaches for two months and was too expensive; Frovatriptan took 2 to 3 hours to work); 418 (noting nerve block effective for about a month); 419 (noting Frovatriptan effective about half the time and dulled the pain moderately the other half, with recurrence the next day); 421 (reporting Zomig nasal spray generally not effective); 422 (noting Zomig not effective; failed Imitrex and Maxalt); 424 (noting failed multiple triptans including Zomig); 426 (noting failure of Zomig and "multiple other medications").

Here, the January 2012 questionnaire postdated the DLI by less than a month and specifically referred to Plaintiff's symptoms within the last 30 days. See AR 410. Dr. Florin treated Plaintiff throughout the relevant period, and his medical report also dated January 17, 2012 indicated that Plaintiff had the "same pain pattern from last year." AR 415. Furthermore, Dr. Florin's August 2017 responses to the interrogatories specified that the 2012 questionnaire related back to Plaintiff's condition before the DLI, and that Plaintiff had experienced the same chronic migraine symptoms since 2006. See AR 1733. These opinions clearly related back to the relevant period and should not have been rejected or discounted on this basis.

Finally, the Court rejects the ALJ's reasoning that Dr. Florin's opinion could be discounted because he failed to explain why Plaintiff was able to work before the alleged onset date despite experiencing headaches. First, the ALJ mischaracterizes the record by stating that Plaintiff "was having headaches on a daily basis as of 1999." AR 812. Although Plaintiff reported

constant daily headaches and longstanding migraines on October 15, 1999, she reported the following month that her daily headaches were less severe and that she had not had a migraine in three to four weeks. See AR 435, 437. The frequency and severity of Plaintiff's headaches continued to decrease throughout 2000. See AR 435 (in January, reported two severe headaches in the past two months), 434 (in June, reported less frequent headaches recurring every two weeks; headaches "stable" in November"). Even as the headaches increased in 2003 and 2004, they did not occur at the same frequency as in the relevant period. See AR 432-33 (in June 2003, reported 6 to 7 symptomatic days per month; in July 2004, reported 2 to 3 headache days per month, all of which were severe). Moreover, the transcript belies ALJ's statement that Plaintiff "work[ed] steadily and on a full-time basis from 1999 to 2005." AR 812. Rather, Plaintiff testified at the 2017 hearing that she was laid off in 2005 because she "had been on multiple medical leaves over the years, and [the company] selected most of us that had medical conditions." AR 826. She further explained that before 2004, she could use her vacation days as sick days and make up work as overtime, but that in her last position before the layoff, she could only use sick time, which she ran out of frequently. See AR 835-37. Taken together, this evidence demonstrates the absence of any conflict regarding Plaintiff's migraine symptoms and ability to work before the alleged onset date. Thus, the ALJ was not entitled to discount Dr. Florin's opinion based on lack of explanation for this theoretical conflict.

In sum, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting or rejecting Dr. Florin's January 2012 opinion. Remand is warranted on this basis.

### III. REMAND FOR AWARD OF BENEFITS IS WARRANTED

Plaintiff argues that Dr. Florin's opinion should be credited as true and this case should be remanded for award of benefits. See JS at 20-21. The Court

agrees.

**A.    Applicable Law**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citations omitted).

Where, as here, a plaintiff contends that she is entitled to an award of benefits because of an ALJ's failure to properly consider medical-opinion evidence, the Court applies a three-step framework for applying the credit-as-true rule and determining whether to remand for further proceedings. See Garrison, 759 F.3d at 1020; Treichler v. Comm'r, SSA, 775 F.3d 1090, 1103-04 (9th Cir. 2014).

First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting the evidence. See Treichler, 775 F.3d at 1103. Second, the Court determines "whether further administrative proceedings would be useful," asking "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." Id. at 1103-04. The Court must "assess whether there are outstanding issues requiring resolution before considering whether to hold that the [evidence] is credible as a matter of law." Id. at 1105. Third, if the Court concludes that no outstanding issues remain and further proceedings would not be useful, it may find the medical evidence true as a matter of law and then

9

determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceeding." Id. at 1101 (alteration in original) (citation omitted); see also Garrison, 775 F.3d at 1021 (holding that district courts retain flexibility to "remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act"). Only when all three elements are satisfied does a case raise the "rare circumstances" that allow the Court to exercise its discretion to remand for an award of benefits. Treichler, 775 F.3d at 1101.

**B.    Discussion**

Plaintiff has satisfied all three conditions. As discussed above, the ALJ failed to provide sufficient reasons supported by substantial evidence for discounting Dr. Florin's opinion. Accordingly, the first element of the Garrison/Treichler framework has been met.

As to the second element, the administrative record is detailed and complete and further administrative proceedings would not be useful. The record includes medical records dating from both before and after Plaintiff's date last insured, in December 2011; several medical opinions; and transcripts from two hearings that include testimony from VEs. "Given this fully developed record, the admission of more evidence would not be 'enlightening,' and 'remand for the purpose of allowing the ALJ to have a mulligan [does not qualify] as a remand for a 'useful purpose.'"[2] Henderson v. Berryhill, 691 F.

---

[2] The Commissioner argues that remand for further proceedings is warranted because "a significant amount of time has elapsed since the date of the ALJ decision, and an evaluation of the medical evidence during the interim period would be required for a finding of disability." JS at 52. But Plaintiff's DLI was in December 2011, and the evidence relating to the period before and for several years after that date appears to be fully developed. Remand for consideration of more recent medical evidence is unwarranted.

10

App'x 384, 386 (9th Cir. May 19, 2017) (alteration in original) (citations omitted). That is particularly true given that this Court previously remanded the case for further proceedings. See Benecke, 379 F.3d at 595 (holding that allowing Commissioner a second chance to decide plaintiff's case "create[s] an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication" (citation omitted)).

Regarding the third and final element, if Dr. Florin's opinion were credited as true, the ALJ would be required to find Plaintiff disabled. Dr. Florin opined that Plaintiff would generally be precluded from performing even basic work activities during times she has a headache, that she has 20 headache days per month, and repeatedly remarked that she was "unable to work" due to her headaches. AR 410-13. The VE testified that if Plaintiff was "off task" 20 percent of the time or absent three or more days per month, no substantially gainful employment would be available. AR 842. Accordingly, Plaintiff satisfied the requirements of the credit-as-true standard.

Plaintiff initially filed her application for DIB in 2011. Further delay of "the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage—financial, medical, and emotional" and contradicts the goals of fairness and efficiency that the credit-as-true rule is designed to achieve. Garrison, 759 F.3d at 1019 (quoting Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1398-99 (9th Cir. 1988)). Because there is not "serious doubt" as to whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits. See Henderson, 691 F. App'x at 386-87 (noting that Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when all of these conditions are met" (citation omitted)).

## IV. CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is reversed and the action is remanded for an award of benefits.

Date: September 11, 2019

DOUGLAS F. McCORMICK
United States Magistrate Judge